The case of Kofi Gaspi v. Garland is submitted. And the next case for argument is Felipe Alvarez v. Gerald Schroeder v. YRC Inc. Good afternoon. May it please the Court, David DeRufer is for the appellants. Nice to be here in person. Appreciate it. I'm going to reserve three minutes and I will watch the clock for a rebuttal. I want to just clarify at the outset, given some of the claims asserted in the original brief, what is at play still from our perspective? Basically three categories of claims. The second meal break claim for the non-drivers, the auto deduct claim for the drivers, and then the derivative claims on any of those. Can you tell me how you define the auto deduct claim? Because there were a couple of different ways it was described in the documents. The auto deduct relates to, it could give rise to a meal break violation for deducting an automatic meal break. Is this for the first meal break? Is it for the second meal break? Or is it something else entirely? I believe it's for both meal breaks, but I will double check and confirm. So the first meal break claim is still on the table? As to drivers, I believe so. And I apologize, I will double and confirm. Okay. And so in the theory of the auto deduct claim is? There's just an automatic deduction without regard to whether the break is actually taken. And also that the automatic deduction could affect, therefore, minimum wage claims as well, and unpaid wage claims, because you could lose time. Because of a deduction that is not properly accounting the time, you may be working and not getting compensated for that. Okay. Thank you. You're welcome. So turning to the second meal break claim, I think that there's sort of an overarching issue, which is are we rigidly constrained by the class certification order? I think if we just look at this case from the pure perspective of summary judgment, there's not been a conclusive establishment that they provide second meal breaks after shifts of ten hours or more. So when you look at Brinker or the Falconberry case to determine if there's a meal violation, you look at the requirements of the wage order, and you look at what is effectively done. Now, you know, when we look at this case, and I think that the discovery response, which is on page 1141 and 1142 of the record, alone should give rise to a triable issue on whether YRC actually did have a policy, practice, procedure, whatever we want to call it. Did they truly provide for second meal breaks after a ten-hour shift? The specific request we have was, I quote, identify and describe in detail all of your second meal break policies, procedures, and practices pertaining to your non-exempt hourly employees for each year during the liability period. It's undisputed. We were, the YRC responded by simply showing us and pointing to the collective bargaining agreements. Collective bargaining agreements is also undisputed. Do not say after ten hours of a shift you can't take a second meal break. They properly define the first meal break, and then they say words to the effect of, we cannot force you to take a second break. So that alone, I think, from just a pure summary judgment perspective, is a genuine dispute as to whether they have complied with the Brinker obligation to provide a second meal break. When you add to it that the employee handbook is also silent, when you add to it that in some locations they have a bell system that notifies the employees when to take their breaks, and it doesn't mean for a second break over a ten-hour shift, when you add to it that in the auto-deduct locations there's no deduction for the second meal break, and that just, I apologize. That just answers one of our questions. It's for the first meal break that there's an auto-deduct. So that's the first meal break, not the second meal break. So are you arguing, just to clarify, because one of the issues that seemed to be disputed between the parties was whether this was a facial attack that the policies were inadequate, or whether you could properly rely on the Brinker presumption that, a rebuttable presumption that, where the records don't reflect the meal break. So do you want to address that? Are you trying to argue both of them, or are you still, because your argument today is moving in between them. And I think it's, and I appreciate the question. I do believe that any one of those routes gets us reversed, and I think any one of them is proper. You know, I think the facial discussion is a little bit, I do believe we've created a tribal issue on facial illegality, because they've responded by referencing a policy to CBAs, and that only document that they say reflects their meal break policies or practices does not comply with the requirement of a second break after 10. So I think there's a tribal issue on facial. However, nonetheless, I think that when we get, I do not believe that a facial policy violation is a requirement in this case. And I think that the class certification order in the defendant's briefing sort of tries to limit us to that. Now, let me go to the real issue then of Donahue. I do believe the Brinker presumption is a new development in law for purposes of this case, because it's undisputed when this MSJ, when this case was briefed, there was one court of appeal decision in California that addressed the presumption's applicability to summary judgment, and that was Silva, and it said, does not apply. There was other courts of appeals that have acknowledged that the Brinker concurrence was merely a concurrence and not binding authority. And in Donahue, which was pending, which occurred during the pendency and post-summary judgment, the California Supreme Court made clear, we now adopt it in full. It is the lay of the land in California. And I think any review of our record and any review of the operation of the presumption, there's no way the summary judgment order can stand if the presumption applies to our case. Can you just explain to me, just as a practical matter, if the class service focused on the facial unlawfulness, alleged facial unlawfulness of the policy, and you're saying for MSJ, it's not, you don't have to be tied to that. As a practical matter, I mean, how would that proceed? I mean, you're somehow proceeding on individual claims. It just seems like it has to follow if you're going to pursue this as a class action. I understand and appreciate it. And let me absolutely answer, because I think that, look, let me go back to sort of the basics. We all know that classroom orders are provisional. They can't be modified, and they're always subject to reevaluation in the line of evidence. Donahue makes clear that, or let me go back. So I think what would happen next, I think that at the summary judgment stage, and there's no case cited by, you know, very good briefs, very competent counsel on the other side. They have not cited a single case that says you are straightjacketed at your MSJ proof based on the reasoning of class cert. So now how would it play out practically? I believe that the way it should play out is we've created tribal issues on the second mail breaks. It should be reversed and sent back to the district court. The defendants have, as they often do, the right at that point to try to seek to decertify. I don't believe it's proper here because I think ultimately what would happen when we go back, Donahue makes clear, and this is 11 Cal 5th at page 77, the presumption itself would create, would carry our burden for trial alone. Now we have more than the presumption, but the presumption gets us there. The defendant. Well, how is that? I mean, because you were seen to be going for an official policy, they didn't present the sort of evidence that Donahue says would rebut. I mean, so why is he, according to Donahue, could have come with representative testimony surveys and statistical analysis, but they wouldn't have any reason to do that if what was being challenged was the policy. Understood. Okay, so I get two answers to that. So step number one, Donahue does say that a defendant can try to present the defense through those common proof methods you've described, which is why if we were to be remanded and they try to decertify, I think we still can establish common proof. But in terms of if the presumption is a presumption affecting the burden of proof, as I believe in our reply brief we've established it is, then there's actually no prejudice to invoking it here, because even if we assume arguendo that YRC would be able to create a responsive triable issue, a presumption affecting the burden of proof remains, and that goes to the jury at that point. It's rebuttable, then. It's rebuttable, right? Well, but not, it's interesting. So this is on page, and I will. Yes, the burden of bringing up the evidence. On page, I believe on page 14 or so of our reply brief we've set forth a law that said if it's a presumption affecting the burden of proof, which I do believe it is because it's a presumption to implement the underlying public policy of the obligation to keep track of employee time, then it affects the burden of proof. And even if it's rebutted, the presumption remains for purposes of it going to the jury. That's the difference between a presumption affecting the burden of proof and producing evidence in California law. I see it's taking you to the end of your time, but we'll give you a minute for rebuttal. Thank you, Your Honors. All right. Good afternoon, Your Honors. It is good to be back in person. The basis of the second meal break claim, Judge Kuda noted that counsel was wavering a little bit back and forth, even in argument, and it was, as the district court found in its order on summary judgment, convoluted. It's very hard to figure out exactly what they were arguing at different points, but if you look at how Alvarez himself described the meal break claim, both in opposition to YRC's summary judgment motion and in Plaintiff's own summary judgment motion, he said the claim was, quote, that YRC fails to adopt and communicate a formal policy to provide second 30-minute meal periods to employees. That was the claim that was argued on summary judgment. There is no California law, and appellants have pointed to none, that obligated YRC to adopt any formal policy regarding second meal breaks. California law provides that a formal policy is not required. All that's required is that, A, the wage order that provides notice of those meal break requirements is posted in a conspicuous location, and, B, that the employer doesn't actively interfere with or prevent or preclude the employees from taking breaks. And that's why Judge Hatter found, in his order, that appellants were seeking to hold YRC to an obligation that California law doesn't impose. And the key case here, I think, is Cole. It's Cole v. CRST. It was, like this case, a wage and hour case involving a freight transport company. The district court, Judge Phillips, in granting summary judgment for the employer, found that the plaintiff had failed to show that the company's policies precluded employees from taking meal breaks. And the district court said, quote, The only affirmative obligation that an employer has that is relevant here is the obligation to notify employees of California's meal and rest break rules. An employer may do this by posting a copy of the rules in a conspicuous location, frequented by employees during the hours of the work day. And just last year, in April 2021, this court affirmed that grant of summary judgment, finding that summary judgment was properly granted because the plaintiff had failed to demonstrate that the employer in any way prevented its employees from taking meal breaks. That's exactly what we have here. There are other district courts, by the way, that have applied California law and found that posting the wage order alone satisfies an employer's obligation to provide meal breaks. We cite those cases in our brief at pages 18 and 19. So there is no obligation to ring a bell. There's no obligation to put it in the employee handbook. There's no obligation to adopt a formal written policy. Those are all illusory and nonexistent obligations raised by a palace. The only obligations that the law actually imposes, it is undisputed, YRC complied with. Yes, Your Honor. Is it your position that the, I'm going to say CBA for just shorthand, that the agreements between the unions and the employer say something about the second meal breaks? Or are they silent entirely? I'm not sure what your position is. They're not entirely silent, Your Honor. What they do is in the Western supplements that apply, there are a number of different ones applying to different positions. Those supplements say, with respect to the second meal break, that YRC cannot compel any employee to take that second meal break. That actually modifies and gives greater rights to the employee than the labor code, which says that second meal break. Your Honor, is that that sentence relates to second meal breaks specifically? That sentence clearly does relate to second meal breaks. But hold on a second because I want to be a little bit more specific about that because I'm struggling with that idea. The sentence is, I think the sentence that you're referring to is, quote, no employee shall be compelled to take more than one continuous meal period during his shift. So is that referring to second meal breaks? It means that an employee, after an employee has taken the first meal break, they cannot be compelled to take a second one. They cannot be compelled to take more than one. Well, that might make sense to me if it read, no employee shall be compelled to take more than one meal period, but it says more than one continuous meal period. Wouldn't that suggest that what that's saying is that you can't force an employee to sort of add break periods together and take them all at one time instead of spreading them over the day?  And I don't think that was ever raised even as an argument below by appellants. I guess my initial question was, what is YRC's position in terms of, do these agreements address second meal periods? And your position is, yes, and it's that sentence. It's our position that they do. They address it by that sentence. And by saying that an employee cannot be compelled to take a second meal break, that certainly suggests, if only by negative implication, that an employee who wants to take a second meal break can take it. And that actually was posted on the reminder notice that was negotiated between the union and YRC, and that effectively constitutes a memorandum of understanding that was, again, posted at every California location. And, again, there's no dispute, no evidence whatsoever presented in the district court, despite years of discovery, that YRC ever actually prevented or discouraged or dissuaded or interfered with an employee who wanted to take a second meal break. I'm thinking about your preemption argument, and I'm wondering, if I accept your reading of this language, and I'm not sure I do, but let's say I accept your reading and then that sentence does relate to second meal breaks, how is this contract any different than California law? And I guess I'm getting to why would we need to look at this agreement to resolve this claim in terms of which is required for preemption to apply? Well, again, because, as I mentioned earlier, I think the question supplements modify the greater rights to the employee that Labor Code 512A does and that Wage Order 9 does, because the statute and the wage order say that a second meal period can be waived only by mutual consent if the shift is not longer than 12 hours and if the first meal period wasn't waived. And, again, we have the meal period reminder that is effectively a modification or a memo of understanding pursuant to the CBAs that expressly references the CBAs and the rights granted under the CBAs with respect to both first and second meal breaks. So our position is we can't determine both what YRC's second meal break policy was and B, whether employees who didn't take that break actually waived it without looking at and interpreting the collective bargaining agreements, including the Western supplements and the meal period reminder. Let me just address Donahue because I have just a couple of minutes and obviously Council spent a lot of time on that. First of all, this was not new law. Numerous district courts, California courts, had applied Justice Breyer's presumption even before Donahue. Silva did not say the presumption does not apply on summary judgment. If you look at Silva, what they said is, it's a different procedural posture here, but we don't even need to decide because assuming the presumption applies and they went on from there. So they never said it doesn't apply on summary judgment. And what's incredibly important here is appellants themselves believed it did apply on summary judgment because they raised it in their own motion for summary judgment, which is not an issue on this appeal, which they have not appealed. But as the court goes back to the excerpts and looks at their summary judgment motion, it's an ER-1174, they specifically argue the presumption on summary judgment. So they chose to argue it in their own motion. They clearly did not argue it. They did not raise it at all in opposition to YRC's summary judgment motion, the record that is before this court, the motion that is on appeal, the ruling that the district court entered. So... If I may interrupt. Yes, sir. If the plaintiffs had proceeded in their class cert with a presumption theory instead of kind of a facial challenge, what evidence would YRC have provided to rebut that? Because at least according to plaintiffs, it's not 60% didn't take breaks. He says it's 99% didn't take breaks. Right, and we believe there's a clear explanation for that, which is that the reason why the 99% didn't change before and after the meal period reminder was posted, and that's that it's understandable that many employees, most employees, perhaps the vast majority of employees, would not choose to take an unpaid 30-minute break at the end of their shift. They'd rather just finish their shift and go home. That's sort of logical common sense, but there would have been certainly discovery on that. There would have been declarations. There would have been depositions. None of that was focused on because, as Your Honor rightly noted, at the class cert stage, and based on the court's class cert order, it was all based on a facial challenge to the policy, and specifically, as I noted at the outset, based on the failure to promulgate a policy, which is not a requirement under California law, any failure to communicate the policy, which again was communicated by posting the wage order and posting the reminder notice, and there's even more evidence in the record about how this was discussed with new hires, and it was discussed in employee meetings and briefings. There was certainly nothing in the record to satisfy YRC's burden, excuse me, to satisfy Appellant's burden to create a genuine issue of material fact as to that policy. I see I am out of time, but. So they clearly reference that 99.9% don't, time cards don't show this break at cert and at the summary judgment stage, so it's, you know, it's not a surprise. I understand that you're saying they're now trying to use it in a new way. I guess I'm, I don't, I'm struggling with that a little bit, because why can't their reference to it be evidence of the policy argument that they're making? Why does their reference to it have to mean that we're no longer making a policy argument, now we're making a more individualized argument, or an as-applied argument? Because, you know, in a facial challenge, normally I just look at the statute or the document or whatever, but here we're already going beyond that because we're looking at notices that are posted in the workplace, so we're not just down just by a document. And so I guess this is a long way to ask this question, but why does reference to this information have to be changing the nature of the argument as opposed to just be providing circumstantial evidence of the argument that they made? Because the only way to rebut that argument, if we're applying a Donahue presumption, which they did not invoke on this motion, if we're applying that presumption, the only way to rebut it is through the type of evidence that Judge Gooda mentioned and the court in Donahue discussed, which is representative sampling, surveys, statistical proofs, et cetera. But couldn't that kind of rebuttal still be effective evidence on a policy-level argument or claim? Well, they specifically disclaimed the relevance of that evidence below. It wasn't up to YRC to go ahead and conduct discovery, and this case has been pending for 10 years, on a particular theory, and introduce rebuttal evidence that appellants themselves said was not relevant to their theory. What they said, again, this wasn't certified as a practice case. It was certified on the issue of the policies on their face. They never tried to modify that certification. They could have. They certainly didn't. They didn't argue anything other than policy in opposition to summary judgment. And even in their class certification briefing and in their trial plan that they submitted to Judge Hatter, they doubled down on that. They said liability as to each and every class member turns on the question of whether there was a uniform failure to promulgate a second meal period policy and or to communicate that policy to class members. And they said, quote, it is for this reason that individualized inquiries, surveys, or statistical proofs are wholly unnecessary. They disclaimed that in order to get class certification. That's an ER, I'm sorry, Supplemental Excerpt of Record 626. So they disclaimed that type of individualized inquiry. Said that has nothing to do with our theory. That has nothing to do with the case. It's irrelevant. That's how they got class certification. That's how they argued it on summary judgment. And now they're coming, you know, ten years after this case was initiated on appeal and for the first time saying, oh, all that stuff that we said was irrelevant, all that stuff we said YRC didn't need to worry about, the district court didn't need to worry about in deciding commonality and predominance. Yeah, all that stuff is relevant and YRC should have known and it should have done that. And in order to address that, if the court were to agree with that position, we would basically effectively have to go back to the beginning and re-litigate the ten years of this case all over again. And again, in our position, it's a clear waiver. It's inconsistent with what they argued in the district court. It's inconsistent with how they obtained certification. And so I don't think it's fair to say YRC nevertheless should have known that it needed to rebut that facial evidence by some type of individualized representative sampling, et cetera. I hope that answers your question. Thank you. Thank you. I want to first say that I agree with your Honor's comments. The 99.9% noted break rate, it can simply be viewed as corroborative evidence of the failure to provide a second meal break after ten hours in any event. I think that it can. But your opposing counsel makes a good point of you do expressly disclaim the evidentiary value of that information and that, you know, telling the court you don't need to get into these evidentiary issues at the same time that you're referencing it, and I don't know what to do with that. Look, I wish I had been writing the papers in the district court. I wasn't. What I will say is I think when you really parse those statements, a lot of them are saying for our liability case, our prima facie case, we don't need to go to representative evidence. We can just look at this. Does it foreclose that their defense of that may require it? And that's what Donahue really made clear. Donahue says, look, at the end of the day, what's the teaching of Donahue? Meal break claims with records showing the failure to take those breaks, the meal break claim should get to a jury basically at that point based on that common proof. And Donahue says, and that was that page 7711, the Cal Fit 77, where they say the defendant can now come back and use the representative evidence, surveys, et cetera, to rebut. But either way, it's a common proof trial at that point. So we have a situation of the record just cannot be read to say they've complied with their duty to provide a second meal break. The law now changes in a way that really supports our position. At a minimum, I would think it should go back to the district court for them to try to rebut the presumption. Thank you. I know I'm out of time. Thank you. Thank both sides for their argument. The case of Alvarez's virus is submitted.
judges: IKUTA, LEE, FORREST